CHISHOLM, et al. *v.* WALTERS, et ux.

No. 43531 May 17, 1965 175 So. 2d 189

*Boyd, Holifield & Harper,* Laurel, for appellants.

*Thomas Gene Clark,* Laurel; *Stanford Young,* Waynesboro, for appellees.

JONES, J.

Appellees, Charles R. Walters and wife, sued appellants, Chisholm and Morgan (residents of Jones County)

in the Circuit Court of the Second Judicial District of Jones County for damages to the surface of lands of appellees done by appellants in the drilling and completion of an oil well on appellees' lands. The jury returned a verdict for $3300. The circuit judge ordered a remittitur so as to reduce the judgment to the sum of $1500, with interest from the date of the judgment, November 12, 1963, and provided that if said remittitur were entered the motion for a new trial would be overruled. We affirm the judgment in the amount of $1500 with interest at the rate of six percent per annum from November 12, 1963, the remittitur having been duly entered.

Appellants owned one-half the minerals and held a lease on the other half. When they decided to drill an oil well, they paid to appellees, on May 12, 1962, the sum of $1,000 as damages to them by reason of said drilling. The lease provided that it "shall only cover the area embraced within the present road right-of-way and the well site." It also provided that, if the said well should be completed as a producer, the release would not cover any damages resulting to the appellees thereafter.

O. C. Collins was an engineer and did the completion work on the well for the appellants. After the well had been completed, Mr. Collins cut the dam to the slush pit so as to permit the contents of said slush pit to run across or inundate approximately five and one-half acres, which acreage was not on the drill site or the roadway. The inundation destroyed a garden and, according to appellees' evidence, about 300 bales of hay.

Appellees also testified that during the construction the appellants' employees got off the road right-of-way onto some three and one-half acres of pasture land and filled it with ruts, which had to be repaired. Both tracts of land were off the well site and the right-of-way.

Appellants contend they were entitled to a peremptory instruction on the ground, first, that the damages were

covered by the release, and, second, that at the time Collins cut the dam he was not their agent or employee.

They also claim that the verdict was so excessive even at $1500 as to require either another remittitur or a reversal for a new trial.

■■■ As heretofore stated, the release provided that it only covered the area within the road right-of-way and the well site, so what occurred off the well site and the road right-of-way was not covered by the release. The cutting of the dam was after the completion of the well as a producer, and for that reason also was excluded from the operation of the release.

Appellants further contend that at the time of the cutting of the dam O. C. Collins was not their employee. Mr. Morgan, one of the defendants, testified that Collins was an engineer and did the completion work of this particular well; that Collins had been employed by his firm on numerous occasions as a completion engineer; that they hired him to do the completion work if they happened to make a well and not a dry hole; that he had been so hired on all the wells they had drilled, except one, in that area. He also testified that Mr. Collins was employed as engineer to complete this well and do everything that was necessary in his opinion to make it a success. When asked if he had ever made any comment to Mr. Walters that Collins was "just showing off and shouldn't have cut the dam," he answered "yes," but said he didn't say it that way — that he told him he had no authority to do it and he should not have done it; and "I got after O. C. about it, he had no business doing it." When asked why he thought Collins should not have done it, he said: "Well, because I think he got excited, and I think he should have waited. He thought he was doing everybody a favor and something good for everybody. Instead of breaking the dam, I think he should have waited to see if we were going to have enough rain to cause it to break

itself. That's what he was afraid of.'' Then the witness said: ''I might tell you this — we were negligent in that we didn't have a good enough wall around our slush pit for him to feel safe.''

Mr. Walters, one of the appellees, testified that he talked to Mr. Morgan immediately after the slush pit was cut and they tried to work out a settlement; that he tried to get something done about it and went to see him one time but they ''didn't get anywhere''; that he went to Morgan's office about a week later and told him that he had come to talk to him again about it, and Morgan told him, ''I am not going to talk to you about it because I turned that whole operation over to O. C. Collins, and I will call him and you can'' (he was interrupted by an objection which was overruled) ''. . . talk to Mr. Collins about it — it is his baby — he is in complete charge of it.''

 We think there was enough circumstantial evidence and statements by Mr. Morgan to justify submission to the jury of the issue as to whether Collins was the agent of appellants at the time he cut the dam to the pit.

Appellants claim error in the refusal of certain requested instructions, including a peremptory instruction, an instruction denying recovery of more than nominal damages, an instruction that any damage for the loss of produce from the garden might not be considered because same had been settled and compromised by the execution of the release, and an instruction that there could be no recovery for damages to the three and one-half acre plot for the reason that the same was settled by the release. These instructions were properly refused.

 Appellants also complain of the refusal of an instruction on the burden of proof. Refusal of this instruction was not error in our opinion, but if error, not reversible error. Appellants were given an instruc-

tion on the burden of proof and we think the jury was sufficiently instructed.

■■ The five and one-half acre plot was temporarily damaged, not permanently. In its instruction for the plaintiffs, the court authorized the recovery of a reasonable rental value of all the land that the jury found had been damaged by the flow of material from the slush pit to the time that they would find from a preponderance of the evidence that the same would be returned to condition for use as pasture. The land was improved pasture. It also authorized recovery of expenses incurred by plaintiffs in restoring the three and one-half acres, and damages suffered by them to their growing crops and vegetation.

■■ We have given thought to the amount of damages and we see no reason to differ with the circuit judge on the amount thereof. We cannot say that the amount as reduced by the judge is so excessive as to justify a retrial.

Affirmed.

All Justices concur.